on behalf of the Avalanche, Mr. Michael Resnick, Rhesus, excuse me, and on behalf of Dan Levy and Thomas Potter. Mr. Rhesus, you may proceed. Am I pronouncing that correctly? I'm sorry? Rhesus? Rhesus, yes. Thank you. You may proceed. Good morning, and may it please the court, counsel, my name is Mike Rhesus. I'm here today on behalf of the appellants, David and Dana Hundryser, who are seated behind the counsel's table. This is an appeal from an order of the trial court that granted the Perry summary judgment on their two-count counterclaim. The trial court found that the meaning of the words, ingress and egress, used in the grant of easement was clear and that the defendants had the right to put in a road over dated, undeveloped pasture land. Because the words ingress and egress were created without a statement of use or purpose, we submit that they were not clear and unambiguous. The trial court erred in relying on the so-called four corners rule and in refusing to consider extrinsic evidence. If we are correct, the judgment below cannot stand. When an easement is created by an instrument, the documents must be construed in accordance with the party's intent. That is key. What did the party's intent? If we were to find that this document was clear and unambiguous, the fact that it's undeveloped or developed is of no import, correct? Honestly, I don't think I could agree with that because there's another issue. And that issue would be whether the proposed use would have a substantial impact or would adversely affect the underwriters' own use and enjoyment of the property. Not the use. You're talking about the proposed improvement. Well, the proposed improvement. Well, that's right. The use is ingress and egress. I mean, the proposed use is given theoretically by the document. Ingress and egress, though, for what purpose? That's really the question. I mean, it can be ingress and egress for farm equipment, ingress and egress for people, ingress and egress for people in motor vehicles. I suppose more broadly it could just be ingress and egress expressly without any restriction whatsoever, which is not what the language here is. It's just ingress and egress without any statement of purpose. And when you have something that vague and open-ended, we submit, we need extrinsic evidence to determine what do the parties intend. And what the parties were talking about here are the parties back in 1990. The original grantors were Paul and Cynthia Hundreiser, and the grantee was Donald Ween. Now, somewhat inconsistently, and I have to admit I was listening to the last case with some interest, and I think Justice Burkhead made the observation that the trial judge at one point may have been inconsistent because he first denied a directive verdict, and then he granted a partial Jane O. V. Well, in this case, we have a judge who first says that our motion for summary judgment is denied, because we made a motion for summary judgment first, and we haven't been able to appeal that because you can't appeal the denial of a motion for summary judgment. But he denied our motion for summary judgment because he said, well, we have differences in the testimony between Donald Ween and the Hundreiser's Paul and Cynthia, who were the original grantor or grantee. Then when it's their motion for summary judgment, the judge says, well, we're not talking about those people anymore, and I find the words are clear and unambiguous. Well, how can they both be true? How can it be that the testimony was relevant when, and to deny our motion for summary judgment, there was a question of fact, right? But when they make a motion for summary judgment, suddenly it's the four corners rule, and what Paul and Cynthia had to say and what Donald Ween had said inconsistently in his deposition suddenly doesn't count, and it becomes a question of law. Was it raised as an issue as to whether or not the document was clear and unambiguous in the first summary judgment motion, or did we go right to the facts? Well, we went, in our motion for, in terms of our motion for summary judgment, we made the motion on the basis that it was clear from the facts, including the fact, that Ween never discussed putting a road in with Paul and Cynthia, that there was an undisclosed intention on his part, and if it's undisclosed, it doesn't count. Okay. So I think our position at that point was that based on the fact that he never discussed putting in a road when he was granted the easement, and given the fact that it was used before and after just for farming, I mean, he would just use it to cut across the property with farm equipment to haul slurry for haying, for very limited, seasonal, occasional use of that. That's what Paul and Cynthia thought the easement was for, and if Donald Ween had a different intent, it was never disclosed, and if it was never disclosed, it didn't count. Okay. Maybe we were right. Maybe we were wrong. Doesn't matter. The judge said it. There's a question of fact. Can't be decided on summary judgment. They make the motion and say the Four Corners Rule, you don't consider anything else clear and unambiguous, and it doesn't matter what the extrinsic evidence is. Well, if it was a question of fact before, we think it was a question of fact on their motion for summary judgment. Don't Illinois cases look, you're talking about whether it's an agricultural purpose or foot traffic or whatever. Yeah. Don't Illinois cases really look to whether there's words of limitation? When we're talking about a, if it just said ingress and egress and didn't have an amount of feet, then you might not know whether it's for foot traffic or for vehicle traffic. But a 30-foot wide easement, certainly in the cases that I've read, can be more than just foot traffic. It's foot and vehicle traffic. Well, it could be certainly he had farm equipment, remember. And it was used for that in the past. Yes, it was. But what I'm saying is there's no words. I mean, the cases with you were, some of these other cases, the courts actually looked to whether or not there were words of limitation in the grant of easement. Well, yes, and I would say that where there is, when there are words of limitation, you're more than likely to get the Four Corners Rule. I mean, for example, in Riverwalk, which I think is a recent case from this district that dealt with it, the easement was for a pedestrian walkway. And the court said that's a word of limitation or a phrase of limitation. It doesn't mean it's going to be a bicycle path. Pedestrian walkway is different than a bicycle path. Another case, there was an easement for a driveway. The court said that doesn't include parking vehicles. In the third case, the court dealt with an easement, which was for gasoline, electricity, telephone service. Didn't include water. Or, in another case, it didn't include cable TV. If you have a limitation, then you're more likely to get the Four Corners Rule because then you have some precision, you know what it's for, and it's either going to be within the definition or outside the definition of the defined use or statement of purpose. Here, we don't have that. We have nothing more than something that is completely open-ended. Ingress and egress. As far as all our cases, the one case that I would direct your attention to would be Smith v. Heisinger, 319-1131-50, cited in our reply brief but also cited by counsel in his brief, where the court had the same phrase, ingress and egress, and held that was ambiguous and allowed for extrinsic evidence. But there were two easements in that case. There was one easement that said one thing and one easement that didn't say that, and the question was which one applied. You only have two easements here. You only have one easement here. I only have one easement without any limitation at all, without any restriction at all. Ingress and egress, and the court said without, you know, granted, you're right, there were two easements, but they didn't say that it was ambiguous just because there were two easements. It also said because of the language. Okay. All right. I mean, there was no suggestion that it was one easement. It would have been a different result is what I'm trying to suggest. There's nothing in the words ingress and egress that conveys a clear and unambiguous right to build a road as a matter of law. The easement didn't specify a particular use or purpose such as to, again, as I indicated, to allow for entry of people or people in vehicles or, more broadly, a legal right of access for, say, utilities. And the words are to be strictly construed because every incident of ownership, not inconsistent with the easement, was reserved to David and Dana Hundreiser as the owners of the surrogate estate. Can we read anything into the fact that it's an easement of 30 feet width? I mean, if it were a footpath, for example, it might have been 4 foot wide. You know what? Maybe that would be true for extrinsic evidence. Maybe that's why you would need the extrinsic evidence. No, the 30 feet I thought was in the easement. Yes, it is. It's described as 30 feet. Right. And if you look at something that's 30 feet wide, you can, without going beyond it, you could assume this is not limited to a pedestrian walkway. Right. This is pasture-linked. He's hauling slurry. He's got farm equipment, and he wants to cut across the property to get to other property he has. He's using farm implements. Farm implements take 30 feet. Granted, 30 feet. Now, if you want to go beyond farm implements, all I'm suggesting is this is something where the judge had to consider extrinsic evidence. He couldn't just say, I'm looking at the four corners and nothing else. Because 30 feet does not convey any particular use or purpose other than granted it had to be for something other than just people. I would concede because that's how he used it. He was using it for farm purposes, and that included equipment. That's where the 30 feet came from. What if this is happening 100 years from now? This easement just lies dormant or whatever for 100 years, and all of a sudden we have some later landowners that are engaged in the same battle. None of these people are alive to testify to what's going on. So does the court just throw up its hands and say, we don't know what this easement means, and we're just going to throw it out? No, absolutely not. Then you go to the language of the easement only? No, Your Honor. In that instance, you're going to be hearing testimony. One of the best cases I can think of is one of the cases that's discussed in the briefs where I think there was a private alleyway in the city of Chicago, and there's a question whether you could use horses, teams of horses, and they went back historically through 50 years. I may be exaggerating. I think it starts from 1855, and the case was decided in 1898 or whatever. And you had 40-some years of evidence concerning how it was used. If you have 100 years, okay, obviously Paul and Cynthia won't be around, Mr. Lina won't be around, none of us will be around, but there will be testimony about how it was used. And if it was only used to haul slurry and only used for haying and only used for purposes consistent with the terrain, the way it was being used before and after, I think all of that would be consistent with reliance on extrinsic evidence. I don't think that you could ever decide the hypothetical you're posing based on the Four Corners Rule. I think it's always, and the cases go into great detail about what the evidence is, and I think that's discussed in the briefs. And there's no question, if you get to the extrinsic evidence, there's a question of fact. They don't even argue that they're entitled to summary judgment if you look at the extrinsic evidence. The last place they ever want you to look is at the extrinsic evidence. There was even a dispute as to whether there was even a road or a path. We have two long-time residents who say there was never a road there. You've got Donald Lina saying, well, gee, he can't remember. Maybe he put in some creek rock, but it was passable. Okay, he's got the farm implements and he's moving them around, and ranting from one parcel to another parcel, but that's all he's doing. And the photographs that we included in the appendix, taken from the record, show the nature of the land. It's all passable. There was never a road there. But there's at least a question of fact about that. If there's a question of fact, they can't get summary judgment. Consider even what they did with what Donald Lina did with an easement. When he was selling Parcel B that became Perry's property to Stephen Kripos in 2001, he gave him an easement over other property owned to the west, Property C. He didn't think that the easement he had was good for utilities because he wound up giving Kripos another easement for utilities over other property he had. Again, it's all a matter of what is circumstantial evidence looking at the circumstances. You've got fact questions. There were fact questions on our motion. There were fact questions on the defendant's motion for summary judgment. Finally, I want to talk about maybe the first question Justice Burke asked, which dealt with, well, the words are clear and ambiguous. Is that the end of it? No, it's not the end of it because there's still an issue about the substantial impact to David and Dana Undreiser because the use has to be a concurrent use. It's a tradeoff between the burdens and the rights of the parties. And what do we have here? They came in after they got summary judgment, and what do they do?  They've already ripped out trees that predated the easement. Shouldn't have done that. Those trees separate their property from the easement? Is that right? The trees are certainly our property, okay, and they're either on the easement or very close to the easement. Okay, but either way, they came in, ripped them out, number one. Number two, they ripped out our gate. We had a gate that leads out to Snipe Hollow Road, a public road, to keep the cattle in. They ripped it out. It predates the easement. Again, that was something that under the law was clear error to when the judge ordered that the gates – I'm sorry, when the defendants – it really is a soft halt remedy. That gate is an entry into your client's property. Yes. Well, it's going to be – it's a gate. Yes, it leads on and then it – It leads on to the other property. How many gates are there? Okay, so you've got a gate at one end of the easement that leads out to Snipe Hollow Road. Then there's a gate on the Perry's fence line, okay, and there's some confusion probably in the deposition testimony about which gates are referring to because you do have two sets at either end, and one goes out to Snipe Hollow and the other is along the fence line, and actually they are in – you can see them. Hold on a second. I know I did my time stuff. I just wanted to answer your question. So this would be the Perry's. That's their fence line. By the way, this is just a cow trail, okay? That's their fence and that's their gate. Now, this – and it's – these photographs were taken in February of 2010, before this dispute really starts. This is – okay, this is – and you can barely see it. I have to look very closely. This is the other gate I'm talking to. This gate – Under the road. Yes, it leads out onto the road over there, okay, and here's a tree. It's not there anymore. All right. They ripped it out, and we have separate claims against them for wrongful tree cutting, trespass. Okay, but that's – the only thing I'm trying to convey is even if they have an easement, and they do have an easement. We've never disputed that there was an easement for some purpose. It doesn't give them the right to rip out the trees and take down the gate. And the last thing I want to say, and then I'll sit down, is simply as to the second appeal we have, we're asking that if the court were to reverse and remand, that on remand that the paris be directed to – they've already put the gate back in, but that was on a temporary basis because they did so without getting prior approval by the court. And we would ask that any remand include a direction that the gate is supposed to stay because it predates the easement, and they should take the road out because they acted at their own peril in putting it in before – I mean, they knew that we were appealing it, right? I mean, we'd asked for the 304A language. We had said we wanted to appeal this. That's why we asked for the stay in the first place. Because they acted at their own peril if they put in that road, and we would ask that any remand include a direction about the road as well. So for all the reasons set forth in that brief, we ask you to reverse and remand. Thank you. Thank you, counsel. Mr. Potter, you may proceed. Thank you, Your Honor. May it please the court, counsel. I think that if this court were to reverse and declare, you know, and rule that the law is that we may look behind the language of easement for ingress and egress, center and imagine what that would do to the title industry, to the certainty of real estate titles, if every person who thinks he has an insured parcel or an insured interest on his Schedule A of his title policy, now would be subject to a neighbor's whim of, well, maybe you're going to build something I'm not going to like, so we're going to have a trial right now, not in retrospect after you've built it, and I'm trying to prove that I was damaged because you built something ten times more than you needed, but, no, right now you can't put in a road to your house, and therefore the easement that you purchased for ingress and egress is meaningless. All you did was buy a lawsuit. What title company is going to insure that? I mean, you have the easement, but when you're going to put in some type of an improvement, isn't there a question of reasonableness? Oh, certainly. And wouldn't that then be subject to perhaps an evidentiary hearing as opposed to an issue of law? Not just because a neighbor says you might put in something I don't like. If there are actual damages, that's fine. Have a trial on actual damages. Maybe it was a lot of overkill and you really didn't need all those footings and curbs and gutters, and maybe there is damages to the Serbian owner. But having a preemptive strike by way of injunction, the Serbian owner doesn't have approval rights over the plans. He's not a miniature zoning board. But there's lots of farms that have gravel lanes, right? Oh, sure. Right. Isn't there a big difference between, in this case, putting in a gravel lane across there or a curb and gutter, let's say? I mean, what if the Parish wanted to put in curb and gutter and drainage so that it would effectively prevent Hunderizers' use of the property? Of course. Then what? Well, then they could have a trial afterwards, and the Hunderizers could say this interferes with my reasonable use of the Serbian estate. So you think there should be a trial before just to prevent that? That's a little over the top, isn't it, let's say, to put in curb and gutter? But there's no allegation to that. No, no, no. I just made that up. This is a hypothetical. Perhaps if they get wind that these are the plans and it's going to be a monumental undertaking, I guess. But that's not what we have here. And they say paved road. You know, paving can be asphalt. Some places they say paving is gravel. It's probably not. It's speaking loosely. By saying paved, they're speaking loosely. Well, under some circumstances, though, maybe those impervious or whatever you call those kinds of – Tarn ship? What's that? Tarn ship? No, no, no. The kind of impervious pavement, you know, pavers-like where the water can filtrate through. And some of those things might be very advantageous to both parties, right? Sure. But, again, just think. Now, there's an important concept here. In some cases you'll find, especially when you're dealing with title insurance, that they say, well, ingress and egress just means you can get to the property. It could be straight up and it could be a one-foot wide path. That's a standard coverage. That's on the jacket. That's not what we're talking about here. What we're talking about here is a grant of ingress and egress. That's not the standard. They don't insure those by the standard coverage on the jacket. Those are insured as a special stand-alone parcel on Schedule A of your policy. That's the kind of thing we're talking about here, where it's an actual grant of ingress and egress. That has a pretty well understood meaning. And that is that you can use that ingress and egress to fulfill your reasonable enjoyment of the dominant estate. Otherwise, why have it? I didn't realize we were going to focus quite that much on this one issue. I did cite the two cases I did in Section 2 of my brief. I think the Schaefer case also stands for that. Bernstein v. Schaefer. And I would be remiss if I didn't say that that was my late father's case. He always tried to be helpful. And that, to me, is the most important case, the one case that we can hang our hats on, both for the rights of the residential owner, because it gets into these modern times that we live in, whereas having a gate in those 1800s cases where you were fencing off the commons, having gates wasn't that big a deal. As Schaefer says, and that was in 1958 when I'm 70 years old, that we're getting into more modern times, and having gates now is much more of an inconvenience to the owner of the dominant estate. Where are we at with that, with the trial court's ruling? The trial court ruled that this was an unambiguous grant of an easement for vehicle and pedestrian traffic. Correct. And the nature of the roadway was to be, at least at this point in time, a gravel roadway? The trial court, and I'm late to the dance here. I was not trial counsel. As I understand it, the trial court says, well, when you're going to build a road, why don't you at least discuss with the Hunderizers what kind of road you're going to build? I guess communications between the Perrys and the Hunderizers is not very good, so they started to build a road there. They're not going to have cement trucks, as far as I know. They just want to have something that is all weather to let them get to their home site. And as far as the status of it, there's no injunction pending now against building the road, as far as I know. There was a 30-day stay, I believe, and that's expired. So the nature of the roadway has never been adjudicated? Correct. And how about the gates? Has that ever been adjudicated? The motion for summary judgment was granted. The order that was entered is not very specific, but because it says the motion for summary judgment was granted, if you look at the motion, the motion dealt with counts one through five, and they dealt with injunctive relief about gates. And so all the injunctive relief counts are out, and the counts that were left are under the Tree Cutting Act, the trespass, intentional trespass, negligent trespass, damages, and tortious interference with the tenant's lease. So there was never a count that was in the nature of a declaratory judgment that said, yes, you have the right to build a road on your 30-foot easement. And it was sort of a backdoor way, I guess, of accomplishing that by dismissing the accounts for injunctive relief. Counsel, do you want to address Mr. Reese's argument about the inconsistencies in the trial court's approach to this? Yes. I think the trial judge, he was not ready to rule that the four corners applied. On the first motion for summary judgment filed by the plaintiffs, he was not going to rule one way or the other because both sides were throwing facts at him which were conflicting. He said, there are all sorts of conflicting facts here, motion denied. He didn't then go on and say, and it's the four corners anyway, I'm ruling for the defendants. So that was simply inaction on his part in taking it a step further. I think you will see in the transcript of the hearing on the motion for summary judgment where the court explains what he meant in another, perhaps, inconsistency that was raised by the plaintiffs where he said that when the two parties to the agreement, to the easement agreement, the two original parties were available and the dispute was between them, then you could go to what they really meant and look behind the words. But once we have BFPs involved, you can't do that. And that's what the trial court was saying in that explanation that was also pointed out as being inconsistent. Is there a gate to the road up now? I don't know. This property is used for cattle to pasture, correct? I don't know if it's being pastured this year. I just don't. Well, at least in the past when that gate was left open, cattle were out on the road. There is an allegation that someone left the gate open and cattle got out, yes. Well, has the issue of gates been resolved in this case at all? To the extent that the injunctive relief requiring the gates to be maintained, those counts were all dismissed. To that extent, it has been. I would say, yes, it has been. Did the court not order that gates be put back up at some point in time? Which would be inconsistent with what you're telling me. Well, pending appeal, I don't know. I would call the court's attention to the Indiana case that I cited, which to me is strikingly similar. And it came out exactly as we were arguing I was sure. The bottom of page 11 in the brief, which I see is incorrectly called a reply brief. It's hard to proofread your own stuff sometimes, but my underlining is the right-of-way easement created by conveyance in general terms without any restriction on its use is to be construed as broad enough to permit reasonable use, I'm sorry, any use that is reasonably connected to the reasonable use of the land to which it is a pertinent. So we have the question, is a driveway to your home a reasonable use? Of course it is. Is it reasonable to expect people to have a mud road or something that's affected by the weather so you can't get to your home half the time? No, that would not be reasonable. So a hard surface road, or at least an all-weather road, would be, in our opinion, a reasonable use. If the plaintiffs don't like what actually gets built, they can go to court and ask for damages. And the actual effect of the road on their use of the serving estate could be adjudicated at that time. How would you measure damages in that circumstance? It would be difficult since it's pasture land. Of course the cattle can't eat grass because there won't be any on that 30-foot strip, but that's all discounted into the price of what they paid. They bought, or whoever, the plaintiff's brother, I believe, David's brother, bought that land burdened by the easement. And there was no agreement. Bernstein v. Schaefer was the law at the time that the land was purchased. And Bernstein v. Schaefer talks about, well, you could put something in the easement agreement that said you had to open and close the gates. Nothing there. And the case goes on to say, when it's an unlimited easement like that, you have the right to not be restricted by having to open and close gates. And it talks about modern times. It talks about agreements in the deed. Do you think a cattle guard would be appropriate there as opposed to a gate? Certainly. Now whose responsibility then would it be to pay for the installation of the cattle guard? The dominant owner has the duty to maintain the easement. I think it would probably be the Serbian owners, but I'm not sure. At both ends? Yes. It's the Serbian owners' cattle. When it comes to gates, does it matter whether the gate was there when the easement was created or not? I don't think so. Because of Bernstein v. Schaefer. It was the law. I know it's a tall order, but people are presumed to know the law. And that changed the law. Counsel cites this McCauley case, which cites the Canzier case. It seems to stand for the opposite proposition. Although those are, I believe, Indiana cases. They are. It's on page 14i. I think if Heather had been a good Illinois case on point, it would have appeared. In Schaefer v. Bernstein, was the gate installed after the easement was created or before? There was an agreement before. Well, early on there was an agreement between Mrs. Jones, I think it was Mrs. Jones, and Widiad that there was an agreement to open and close a gate. The gates that we're talking about, and then because of change in use of the property, that agreement became unnecessary. I believe the gates were installed after the initial agreement, but the Schaefer's bought subject to that initial agreement. I believe it was after the agreement. I want to go back to Justice Burke's question, because he asked a number of questions about the status of the gates, and what did the judge really say? When he made his ruling on summary judgment on October 16, he said, and it's at pages 85 and 86 of the report of proceedings, that with regard to the gates, they have a right, meaning the Perrys, under the present law, to have it unobstructed. So what they did after the stay ran out, four days later, without telling us, they went in, tore out the gates, and started putting in the gravel road. Now, this is what the judge also said at the October 16 hearing, after he ran a judgment. If you have plans to put in some sort of road, let the Hunterizers know what it is, and they can raise an issue if they think it's too broad, too expansive, whatever. Okay. We never even had that opportunity. So what the judge did, one, we did find out about it, because Dana was out there, and after we went in on an emergency motion, and we have the transcript from November 28, the judge said, temporarily put the gates back in. That was because the Perrys, ignoring what the judge said on October 16, without notice, ripped everything up. Okay? So the gate is back in temporarily. There are cows still there, okay? So the cows can't get out on the road, only because, after the judge said that the easement was going to be unobstructed, then said, temporarily, put them back in. Okay? And part of what we're asking the court to do today is, if there's a remand with directions, tell the judge that the gate stays. Now, he talks about Schaeffer versus Bernstein. I like Schaeffer versus Bernstein. Great case, 1958. What happened there? They were trying to put the gate in over the easement, after the easement had been created. There's a little bit of a difference between putting something in after you've created the easement, and creating the easement when the gate's already been there for 45 years. All the Supreme Court said in Schaeffer was, you can't block it when it wasn't there when the easement was created. When it comes to vegetation, it predates the easement. It stays. The cases we cite, Flowers versus Valency, the other cases we cite in our brief, they make the distinction between, it's not based on whether the fencing act applies. It's based on whether or not it predates the easement. No dispute. The gate predates the easement. It should stay. Counsel started his argument talking about title insurance and the real estate industry will be in constant turmoil if the Four Corners rule isn't applied in this case. Nothing could be further from the truth. The issue here is simply one of draftsmanship. If an easement for ingress and egress is appropriately drafted, there's no issue. And as a matter of fact, Mr. Wiener, when he sold other property years later, did specifically allow or there was a grant for a road with regard to two other pieces of property that he sold. Obviously, it can be done. But this one was vague and it was open-ended, and then we submit the scope should depend on extrinsic evidence because that, too, is relevant when we're talking about the party's intent. What was their course of conduct? That's simply blank letter law. The defense wanted to decide this case in a vacuum, although from the questions I heard the panel ask, I think you have some sensitivity to the fact that if you're starting to ask questions about what kind of road should be put in and what type of impact is there to the hung risers and is this a reasonable change in the use? Well, that can't be decided on summary judgment. That can't be decided under the Four Corners Rule. So much of the argument today has gone off of the Four Corners Rule because I think there is an intuitive understanding that you can't decide this case based on nothing more than three little words, ingress and egress. Well, maybe five words if we say 30 feet of ingress, 30 feet wide of ingress and egress. For more than 20 years, the land where the easement was located has been used for cattle. If there's been any use of the easement, it was consistent with the use of the land for farming. The plant's land was always farmland. The defense parcel was always farmland. The only use of the easement by women was for hauling manure and hanging consistent with farmland, and it did not interfere with our pasturing and grazing of cattle. The road put in by the defense raises a question of fact as to the impact on our land. They removed gates leading to the public road, and that would invite accidents between cattle and vehicles. The road is made of gravel. Cattle can't eat gravel. They can't chew on asphalt. As part of the directions on remand, we would ask the court to make clear that the preexisting gate, our gate leading to the public road, should remain in place. The defense has no right to remove the gate or anything else that predates the easement, and that they must remove the road they put in at their own peril during the pendency of this appeal. One last observation I would make is I'm mindful of the fact that the court doesn't grant oral arguments as a matter of right. It's a matter of grace. This case is important to the parties. My clients are here today. I think you understand the importance, and we are grateful for the opportunity to address the court today. We ask you to reverse the remand. Thank you. I'd like to thank both counsels for their arguments today. We will take the case under advisement. The decision will be rendered in due course, and we are adjourned.